IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>ex rel. [UNDER SEAL], | ) | |
| Plaintiff/Relator, | ) | |
| v. | ) | Case No:________________________ |
| [UNDER SEAL], | ) | **FILED UNDER SEAL**<br>**DO NOT PUT IN JURY BOX**<br>**DO NOT PUT ON PACER** |
| Defendants. | ) | |

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>ex rel. Benjamin Wozniak,<br><br>Plaintiff/Relator,<br><br>v.<br><br>Hpotech Medical ve Teknik Çözümler Sanayi ve Ticaret A.Ş. d/b/a HPO TECH; HPO TECH USA INC.; SCIENTIFIC AGE MANAGEMENT, LLC<br><br>Defendants. | ) | Case No:____________________<br><br>**FILED UNDER SEAL** |

## ***QUI TAM*** **COMPLAINT**

Relator Benjamin Wozniak, on behalf of himself and the United States of America, alleges and claims against Defendants Hpotech Medical ve Teknik Çözümler Sanayi ve Ticaret A.Ş. d/b/a HPO TECH ("HPO TECH"), HPO TECH USA, Inc., Scientific Age Management, LLC (collectively "Defendants") as follows:

## **INTRODUCTION**

1. HPO TECH has violated the False Claims Act (31 U.S.C. § 3729 *et. seq.*) by knowingly concealing, avoiding, and conspiring to knowingly conceal and avoid obligations to pay or transmit money or property to the United States.

2. Specifically, HPO TECH knowingly evaded tariff duties imposed on hyperbaric chambers it imported from the country of Turkey (Türkiye).

3. As of April 2025, the United States imposed an additional 10% tariff on Defendants' hyperbaric oxygen chambers.

4. HPO TECH has knowledge that there is a 10% ad valorem tariff on the full price

of its imported hyperbaric chambers. However, HPO TECH developed a pattern and practice of conspiring with its customers and importers of record to declare a lower value of its imported products on import documents solely to reduce import taxes and duties.

5. HPO TECH executes this scheme by issuing two separate invoices, one to its customers showing a reduced value which is solely for import duty manipulation and another full value invoice that represents the actual purchase price paid for the hyperbaric chambers.

6. Defendants also misclassify the merchandise and used false customs descriptions—deliberately labeling Class II medical hyperbaric oxygen chambers properly classifiable under HTSUS heading 9019.20 ('therapeutic respiration apparatus') as HS 9023 'demonstrational' devices (e.g., 'negative pressure altitude training devices')—to alter CBP treatment, reduce regulatory scrutiny, and divert FDA oversight that follows from correct 9019.20 classification and 510(k) verification.

7. Correct classification under HTSUS 9019.20 for oxygen therapy and other therapeutic respiration apparatus ensures automatic FDA import screening, including verification of 510(k) clearance where applicable; Defendants' use of HS 9023 labels is designed to sidestep that oversight.

8. Through this scheme, HPO TECH has knowingly avoided obligations to pay proper tariff duties to the United States — in violation of inter alia, 19 U.S.C. §1592; 18 U.S.C. §§ 371, 542, 545, 1001— by submitting and caused the submission of false invoices to U.S. Customs and Border Protection ("CBP") that significantly undervalued the hyperbaric chambers imported from Turkey from April 2025 to present.

9. By falsely representing lower invoices to CBP to avoid paying higher tariff duties, HPO TECH has knowingly used, or caused to be used, false records or statements to conceal, avoid, or decrease its obligation to pay money to the United States, in violation of the False Claims

Act, and specifically the "reverse false claims" provision. 31 U.S.C. § 3729(a)(1)(G).

10. Similarly, by creating false undervalued invoices, Defendant HPO TECH knowingly makes, uses, or causes to be made or used, false records or statements material to a false or fraudulent claim in violation of 31 U.S.C. § 3729(a)(1)(B).

11. Pairing false descriptions and misclassification with undervaluation, Defendants ensured CBP assessed duties on an artificially low basis and diverted CBP targeting and admissibility review, thereby concealing and decreasing obligations owed to the United States.

## JURISDICTION AND VENUE

12. This action arises under the False Claims Act, 31 U.S.C. § 3729 *et seq*. ("False Claims Act").

13. Accordingly, this Court has jurisdiction under 28 U.S.C. §1331. This Court also has jurisdiction under 31 U.S.C. §3732(a).

14. Venue lies in this judicial district under 31 U.S.C. § 3732(a) because Defendants transact substantial business in this judicial district including importing its undervalued shipments through the Port of New York and New Jersey

## PARTIES

15. Defendant Hpotech Medical ve Teknik Çözümler Sanayi ve Ticaret A.Ş. ("HPO TECH") designs, manufactures, and exports hyperbaric oxygen chambers for sale in the United States.

16. HPO TECH is a corporation organized under the laws of Turkey with its principal place of business at Ferhatpaşa Mahallesi, 31. Sokak No:49, Ataşehir, İstanbul, Turkey, founded in 2019.

17. Defendant HPO TECH USA, Inc. was created by Michelle Yagelski, a United

States distributor for HPO TECH, and is a corporation organized under the laws of the State of Texas with its principal place of business at 3300 Bee Cave Road, Suite 650-1232, Austin, TX 78746. Scientific Age Management is the listed Registered Agent for this corporation, with Clay Womack as the Director.

18. Defendant Scientific Age Management, LLC, is a limited liability company organized under the laws of Texas and serves as an intermediary in Defendants' scheme and has received at least twenty-one shipments of undervalued hyperbaric chambers from HPO TECH. Clay Womack serves as the interim CFO and Board Member for Scientific Age Management. Defendant Scientific Age Management is HPO TECH's biggest distributor in the United States.

19. Relator Benjamin Wozniak was an independent contractor for HPO TECH in the United States. From October 2024 to April 2026, Relator Wozniak worked as a technician performing installations, repairs, inspections, and maintenance services for HPO TECH hyperbaric chambers in the United States. Relator Wozniak also sells hyperbaric chambers in the United States as an independent contractor for HPO TECH.

20. In this role, Relator Wozniak works directly with HPO TECH customs officials in Turkey and learned that HPO TECH knowingly submits false invoices to CBP to pay lower tariff duties applied to hyperbaric chambers imported into the United States.

21. Prior to filing this Complaint, Relator voluntarily disclosed to the United States the information upon which this action is based. Relator is unaware of any prior disclosure of any information materially pertaining to the fraud alleged in this Complaint. To the extent that any public disclosure has taken place as defined by 31 U.S.C. §3730(e)(4)(A), Relator is the original source of the information for purposes of that Section. Relator has knowledge that is independent of and materially adds to any purported publicly disclosed allegations or transactions and has

voluntarily provided that information to the United States before filing this Complaint as contemplated by 31 U.S.C. §3730(e)(4)(B)(2). Relator serves the United States contemporaneously herewith a statement of the material evidence in its possession upon which its claims are based.

## APPLICABLE LAW

### *A. The False Claims Act*

22. The False Claims Act provides, *inter alia*: any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government" or conspires to commit a violation of the False Claims Act is liable to the United States for a civil monetary penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note; Public Law 104–410 [1]), plus treble damages. 31 U.S.C. § 3729(a)(1)(C), (B), (G).

23. Under the FCA, the terms "knowing" and "knowingly" mean that a person, with respect to information (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information. 31 U.S.C. § 3729(b)(1)(A). Proof of specific intent to defraud is *not* required. *Id.* § 3729(b)(1)(B).

24. The FCA defines the term "obligation" as "an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment." 31 U.S.C. § 3729(b)(3).

### *B. Tariff Duties*

25. Executive Order 14257 was signed by Donald Trump on April 2, 2025, and invoked the International Emergency Economic Powers Act (IEEPA). 50 U.S.C. § 1701.

26. Pursuant to this authority, Executive Order 14257 imposed an additional ten percent (10%) ad valorem tariff on imported merchandise from trading partners, unless otherwise exempted. Executive Order 14257, at 10.

27. As a result of Executive Order 14257 and the governing customs statutes and regulations, importers incurred a legal obligation to pay an additional ten percent (10%) duty on the declared value of covered merchandise imported into the United States.

28. On February 20, 2026, the Supreme Court held that IEEPA does not authorize the President to impose tariffs, and, on the same date, the White House issued an order ending the additional ad valorem duties imposed pursuant to IEEPA, including those imposed under Executive Order 14257.

29. On February 24, 2026, in replacement of the IEEPA tariffs, the United States implemented a 10% global tariff under Section 122 of the Trade of 1974. Accordingly, after February 24, 2026, the tariffs imposed on HPO TECH products from Turkey are authorized under Section 122 of the Trade Act of 1974, as opposed to IEEPA.

30. Regardless of the authority imposing the tariffs, Defendants' had a consistent and ongoing obligation under the customs laws to provide accurate entry information, which Defendants failed to do. *See* 19 U.S.C. §§ 1484, 1505, 1592; 19 C.F.R. §§ 141.61, 141.86.

31. The HTSUS, maintained and published by the United States International Trade Commission pursuant to 19 U.S.C. § 1202, supplies the tariff headings, subheadings, and duty treatment applicable to entered merchandise, while the Tariff Act requires the importer of record to use reasonable care in providing CBP the information necessary to determine release,

classification, valuation, and duty liability. *See* 19 U.S.C. §§ 1202, 1484(a)(1).

32. Duties, including additional ad valorem tariffs imposed by executive action, are assessed and collected by CBP at the time of entry or withdrawal from a warehouse based on the information declared by the importer. *See* 19 U.S.C. § 1505(a).

33. Because duties flow from both the valuation and the tariff classification of goods under the HTSUS, any false or misleading classification or description, including misdescribing regulated medical devices as non-medical equipment, is material to CBP's duty calculation and admissibility determinations.

34. CBP relies on entry documentation, including the Entry Summary (CBP Form 7501) and commercial invoices, to determine the applicable duty, including any additional tariffs imposed under Executive Order 14257.

35. Violations of orders and regulations issued pursuant to the International Emergency Economic Powers Act are subject to civil and criminal penalties under 50 U.S.C. § 1705.

36. Specifically, it is unlawful for any person to violate, attempt to violate, conspire to violate, or cause a violation of any license, order, regulation, or prohibition issued under IEEPA. *See* 50 U.S.C. § 1705(a).

37. Any person who commits such an unlawful act is subject to civil penalties in an amount not to exceed the greater of: (1) $250,000; or (2) twice the amount of the transaction that is the basis of the violation. *See* 50 U.S.C. § 1705(b).

**C. United States Import Laws**

38. The "importer of record" is required to use reasonable care to provide CBP with sufficient information, including declared value, classification, and rate of duty, to enable CBP to properly assess duties, collect accurate statistics, and determine whether other applicable legal requirements, if any, have been met with respect to entry of merchandise into the United

States. 19 U.S.C. § 1484. CBP is then responsible for fixing the final classification and value of the merchandise. *Id.*

39. At the time of the entries at issue, CBP assessed duties and fees based on the information supplied by the importer or its agents, including the declared value, tariff classification, country of origin, and description of the merchandise, as reflected in entry documentation and commercial invoices. *See* 19 U.S.C. §§ 1484(a)(1), 1505(a); 19 C.F.R. §§ 141.61, 141.86.

40. The primary method of appraisement for imported merchandise is transaction value, i.e., the "price actually paid or payable for the merchandise when sold for exportation to the United States," plus any statutorily required additions. *See* 19 U.S.C. § 1401a(b).

41. Anyone who knowingly enters goods into the United States upon false duty classifications or by means of false statements is subject to criminal punishment of fines and up to two years imprisonment. *See* 18 U.S.C. §541; 18 U.S.C. §542.

42. It is unlawful to enter, introduce, or attempt to enter merchandise into the commerce of the United States by means of any document, statement, act, or omission that is material and false, or materially incomplete, including false statements or omissions relating to valuation, tariff classification, country of origin, or the nature and description of the merchandise. *See* 19 U.S.C. § 1592(a).

43. Moreover, "[w]hoever knowingly and willfully, with intent to defraud the United States, smuggles, or clandestinely introduces or attempts to smuggle or clandestinely introduce into the United States any merchandise which should have been invoiced, or makes out or passes, or attempts to pass, through the customhouse any false, forged, or fraudulent invoice, or other document or paper;" or "whoever fraudulently or knowingly imports or

brings into the United States, any merchandise contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law shall be subject to criminal fines or imprisoned for not more than 20 years." 18 U.S.C. § 545.

44. CBP relies on an "Entry Summary" – found in Customs Form 7501 – to assess duties and classify goods upon importation.

45. Each entry of goods into the United States must be accompanied by a Form 7501.

46. Form 7501 requires the Importer of Record to identify whether the entry is subject to tariffs and, if so, the tariff rate the importer will pay. Therefore, the information that the importer of record is required to disclose on CBP Form 7501 is material to the importer's tariff and duty obligations to the United States related to that shipment.

47. Because importers of record are required under 19 U.S.C. §§ 1484 and 1485 to file true and correct statements on all customs forms including Form 7501, setting forth the merchandise and the applicability of any duties, including tariff duties, those importers are also obligated to correct any such statements that they subsequently learn are false. See, e.g., 19 C.F.R. § 141.90 ("The importer or customs broker must include on the invoice . . . the rate of duty for the merchandise being entered."). CBP regulations provide that the method for correcting an entry summary prior to liquidation via a Post-Summary Correction. *See* 76 Fed. Reg. 37136 (June 24, 2011); *see also* US. Customs and Border Patrol, Post Summary Corrections ("A filer would submit a PSC because they are legally obligated to correct an entry per 19 U.S.C. 1484 and 1485.").

48. Defendants' use of undervalued invoices, conflicting invoice sets, false or

misleading descriptions of the imported chamber systems, and entry documents that did not reflect the true value and nature of the merchandise were material to CBP's determination of the duties and fees owed and resulted in the underassessment of amounts lawfully due at entry.

49. Accordingly, the accurate declaration of transaction value is material to the Government's determination of duties owed[1], and the obligation to pay such duties constitutes an "obligation" within the meaning of the False Claims Act.[2] Therefore, falsely understating the value of imports to reduce duties owed to the United States is a material violation of the customs laws as such conduct conceals or decreases an obligation to pay money to the United States.

**DEFENDANTS' FRAUDULENT SCHEME**

50. Defendants acted knowingly and in concert to conceal and fraudulently reduce customs duties obligations through a number of schemes including:

- offering and specifying lower prices on manipulated invoices for customs purposes;
- coordinating with brokers and freight forwarders complicit or ignorant to Defendants' schemes;
- issuing false and under-valued transaction-specific invoices;
- declaring lower values on import summaries inconsistent with actual prices;
- use of false customs descriptions and misclassification of Class II medical hyperbaric chambers to reduce scrutiny, alter duty treatment, and facilitate entry processing.

51. In April 2025, Relator Wozniak first became aware that additional tariff duties

---

1 *See United States ex rel. Taylor v. GMI USA Corp.*, 714 F.Supp.3d 275, 287 at fn. 3 (S.D.N.Y.2024) ("Misclassification of goods in order to lower Customs duties has been recognized as a viable basis for asserting a reverse false claims case under the False Claims Act.")

2 *See United States ex rel. Taylor v. GMI USA Corp.*, 774 F.Supp.3d 645, 662 (S.D.N.Y.2025) ("The requirement to pay customs duties constitutes an obligation to pay money to the government.")

applied to Turkish-origin imports through discussions with HPO TECH's U.S. distributor, including complaints about the added costs. Relator then learned that HPO TECH and its agents were systematically understating declared values while invoicing U.S. purchasers at substantially higher amounts.

52. The products at issue are not low-cost consumer goods but regulated medical-grade pressure systems, including hyperbaric oxygen chambers. These devices include "1 Person Hyperbaric Oxygen Treatment Systems" (model TKBO-3X) manufactured by HPO TECH.

53. To effect its scheme, HPO TECH maintains and utilizes dual sets of invoices for the same transactions: (a) "declared value" invoices submitted to customs authorities reflecting artificially reduced prices, and (b) "full value" invoices and internal records reflecting the true amounts charged to customers. This dual-invoice practice allowed HPO TECH to present false information to CBP while simultaneously collecting full payment from purchasers, thereby concealing the true dutiable value of the imported goods. Defendants not only knew that the value of these hyperbaric chambers was higher, but they also knew the products were misclassified when using customs descriptions such as "negative pressure altitude training device.

54. HPO TECH employees' own communications confirm that the undervaluation was intentional and designed to evade taxes and duties. In written communications, HPO TECH explicitly referenced their ability to "lower taxes." For example, in an October 2, 2025 sales communication, HPO TECH stated that U.S. import tariffs typically add approximately 15% to the cost but that "we have a way to lower the taxes."

**A. G23 LLC Transaction – The July 11, 2025 Shipment**

55. For example, on June 10, 2025, HPO TECH representative Emre Deniz sent an invoice regarding the importation of a "Negative Pressure Altitude Training Device" for customer G23 LLC. Similarly, the shipment documents for the G23 transaction characterized the merchandise as a 'negative pressure altitude training device,' which is a false description and inconsistent with the merchandise's true nature and regulatory status as a medical-grade hyperbaric systems.

56. Also on June 10, 2025, Emre Deniz then wrote to the HPO TECH contractors including Relator and customer Scott Sment "Can you inform our customer about customs clearance and ISF details? I guess he has not had a customs broker before. The invoice value is 60,000 USD. Can you calculate the total registration fee, ISF fee, customs procedures, and taxes, and send it?" This $60,000 invoice amount is the fraudulently under-valued amount used to minimize customs duties.

57. On July 11, 2025, HPO TECH caused the importation into the United States of a hyperbaric chamber shipment from Istanbul, Türkiye, aboard the MELCHIOR SCHULTE, under House Bill of Lading No. SCLIST493425, Master Bill No. 10200298, and in container TRKU4471760 with seal no. 777818. The shipping and customs records identify the shipper as HPOTECH MEDIKAL VE TEKNIK COZUMLER SAN VE TIC AS / HPOTECH MEDIKAL VE TEKNIK ÇÖZÜMLER, the consignee and importer as G23 LLC, with Chicago, Illinois, and Austin, Texas addresses appearing on the Bills of Lading and entry records, and the customs broker/forwarding representative identified in the import documents as All-Ways Forwarding Intl. and/or Freightlead LLC.

58. The records further reflect that the shipment was destined for delivery in Austin, Texas, after discharge in New York, New York, and that the goods were described as a

negative pressure altitude training device, together with related compressor and regulator components. In connection with that importation, Defendants submitted, or caused to be submitted, customs documentation declaring a value of approximately $60,000 for the device. By doing so, HPO TECH knowingly presented a false declared value to CBP to reduce assessed duties while collecting full payment from the purchaser, thereby concealing the true dutiable value and evading the ad valorem tariff owed.

59. However, HPO TECH issued a full-value invoice to 3901 Waters Edge Drive, LLC / Scott Sment in the amount of $160,800 for this same Petra 2.4 ATA chamber, oxygen concentrator, air chiller, shipping, and installation/training to Texas, while contemporaneous communications reflected that the "invoice value" being used for customs calculations was $60,000.

**B. November 17, 2025 Transaction**

60. On or about November 17, 2025, HPO TECH issued an invoice to Boyes reflecting a total purchase price of $116,500.00 for a Zeugma 2.4 ATA hyperbaric oxygen chamber system and associated equipment. The invoice identifies Boyes as the U.S. purchaser and includes delivery and installation components, confirming that the transaction contemplated shipment into the United States.

61. Subsequent communications reflect Boyes's reliance on Defendants to manage or facilitate the customs process. In particular, Boyes inquired whether the unit could be shipped "to USA HPOTECH and they get it through customs," indicating an understanding that Defendants or their U.S.-based intermediaries could control or influence the customs clearance process.

62. Financial records confirm the execution of the transaction and the transfer of funds consistent with the invoiced purchase. A wire transfer authorization from Commerce Bank reflects a payment of approximately $55,900 from Boyes to HPO TECH for the purchase of a hyperbaric chamber, identified as a "second payment." The wire transfer identifies HPO TECH as the beneficiary and routes funds through a U.S. intermediary bank, further establishing the U.S. nexus of the transaction.

63. Boyes subsequently confirmed that he had "sent the second payment, including tariffs," indicating that tariff obligations were incorporated into the transaction structure directed or influenced by Defendants.

**C. January 19, 2026 Transaction**

64. On or about January 19, 2026, Defendants, through HPO TECH's export representative Emre Deniz, communicated directly with U.S. purchaser Ryan Brumberg regarding the importation of a Zeugma hyperbaric oxygen chamber into the United States. In that communication, Deniz explained that the product would be subject to customs duties calculated as a percentage of the declared value and outlined the associated import costs, including customs duties, registration fees, and clearance expenses. Deniz further represented that such duties would be approximately fifteen percent (15%) of the declared value.

65. In the same communication, Deniz explicitly proposed a scheme to understate the value of the imported merchandise for purposes of reducing customs duties, stating: "We can reduce the product price to $50,000 to avoid additional tax. Would you like us to do this?" This statement constitutes a direct admission that Defendants knowingly offered to submit false customs values to evade duties owed to the United States.

66. Contemporaneous commercial records confirm that the true transaction value of the merchandise substantially exceeded the proposed declared value. An invoice issued by HPO TECH to Brumberg reflects a total purchase price of $125,275.00 for the hyperbaric chamber system and associated components, including oxygen concentrators, air systems, and installation services. Thus, Defendants' proposed declared value of $50,000 represents an artificial reduction of approximately $75,275—roughly 60% below the true transaction value.

67. Based on the duty framework described by Defendants themselves, this undervaluation would reduce the customs duties owed from approximately $18,791.25 (15% of $125,275) to $7,500 (15% of $50,000), resulting in an underpayment of approximately $11,291.25 on this transaction alone. This differential demonstrates the materiality of the false statement to the government's collection of duties.

**D. Defendants misclassify and misrepresent their products to avoid scrutiny.**

68. Technical certifications and device testing (e.g., identification as '1 Person Hyperbaric Oxygen Treatment Systems' model TKBO-3X) demonstrate Defendants' knowledge of the devices' medical nature, rendering their use of non-medical descriptions knowing and intentional.

69. HPO TECH's personnel, including Emre Deniz, the Customs Company Contact, directly participated in this process by communicating invoice values, discussing tax reduction strategies, and coordinating import logistics tied to those values.

70. The technical and certification records further demonstrate that Defendants were fully aware of the true nature, complexity, and regulatory classification of the products, demonstrating that the undervaluation was known and intentional.

71. Defendants are technically capable of manufacturing genuine negative-pressure and multibaric research equipment, including the Apex (hypobaric), HPOD UNO (multibaric), and Tampa (multibaric) models; however, the units imported and sold to U.S. purchasers at issue here are positive-pressure HBOT systems marketed and used for therapeutic oxygen treatment, rendering Defendants' 'negative pressure' descriptions false and materially misleading.

72. False descriptions and misclassification altered CBP's targeting profile and admissibility review by presenting regulated medical hyperbaric systems as non-medical 'training' equipment, thereby reducing the likelihood of referral for FDA-related compliance checks and enabling expedited entry on undervalued documentation.

73. Because duties and additional ad valorem tariffs are assessed on the entered merchandise according to classification and description as reflected on CBP documentation, these false statements directly decreased the assessed duty and concealed the United States' entitlement to additional amounts.

74. Through this scheme, Defendants knowingly avoided and decreased obligations to pay money to the United States by submitting false or misleading customs values.

75. Relator has knowledge that Defendants have imported dozens, potentially hundreds of undervalued hyperbaric oxygen chambers through this scheme.

76. As a direct and proximate result of HPO TECH's conduct, the United States was deprived of lawful customs duties, CBP was induced to rely on false statements, and purchasers were misled regarding both the value and safety of the products. The scheme

resulted in significant underpayment of duties and conferred an unlawful financial benefit upon Defendants.

**COUNT ONE - VIOLATION OF 31 U.S.C. § 3729(A)(l)(G)**

77. The allegations in Paragraphs 1-76 are re-alleged and incorporated by reference as if fully set forth herein.

78. By and through the fraudulent schemes described herein, Defendants knowingly – by actual knowledge or in deliberate ignorance or with reckless disregard of the truth of the information – made, used, or caused to be made or used, false records or statements material to an obligation to pay or transmit money or property to the United States, or knowingly concealed or knowingly and improperly avoided an obligation to pay or transmit money or property to the United States, to wit:

a. Defendants knowingly made false, misleading or improper statements on CBP Form 7501 and/or other import documents submitted to the United States to illegally and fraudulently evade paying thousands of dollars in tariff duties owed on imports of hyperbaric chambers from Turkey;

b. Defendants knew that it had illegally and fraudulently evaded thousands of dollars of tariff duties owed on imports of hyperbaric chambers from Turkey, yet took no action to satisfy its obligations to the United States to pay such duties and continued to evade tariff duties owed on its imports;

c. Defendants knowingly used false customs descriptions and misclassified Class II medical hyperbaric chambers as non-medical 'negative pressure altitude training devices' on CBP Form 7501, commercial invoices, bills of lading, and other entry documents, which were material to CBP's assessment of duties and resulted in the

underassessment of amounts lawfully due.

79. As a result of Defendants' fraudulent conduct, the United States has suffered damage in the amount of duties and penalties unlawfully evaded by HPO TECH.

WHEREFORE, Relator demands judgment in his favor on behalf of the United States, and against Defendants, in an amount equal to treble the damages sustained by reason of HPO TECH's conduct, together with civil penalties as permitted by 31 U.S.C. § 3729, attorneys' fees and costs, and such other, different, or further relief to which Relator may be entitled.

**COUNT TWO– VIOLATION OF 31 U.S.C. 3729(A)(1)(B)**

80. The allegations in paragraphs 1-76 are re-alleged and incorporated by reference as if fully set forth herein.

81. As a result of the foregoing conduct, Defendants knowingly made, used, or caused to be made or used, false or fraudulent records or statements material to the payment of false or fraudulent claims, in violation of 31 U.S.C. § 3729(a)(1)(B), including on CBP Form 7501 and/or other import documents including false invoices used to misrepresent tariffs owed to the United States.

82. Defendants' false statements were material to undervalued tariff assessments.

83. The United States, unaware of the falsity or fraudulent nature of the false statements or records allowed Defendants' products to be imported at lower tariffs than were actually owed.

84. Because of these false or fraudulent statements or records, Defendants are liable to the United States for incurred damages resulting from such statements or records, trebled, plus civil penalties for each violation of the Act. As a result of Defendants' violations, the United States has suffered substantial damages in an amount to be determined at trial.

**COUNT THREE– VIOLATION OF 31 U.S.C. 3729(A)(1)(C)**

85. The allegations in paragraphs 1-76 are re-alleged and incorporated by reference as

if fully set forth herein.

86. HPO TECH's and their affiliates acted and continue to act, in concert to violate the False Claims Act by knowingly concealing or knowingly and improperly avoiding or decreasing their obligation to pay or transmit money or property to the United States by making false, misleading or improper statements on CBP Form 7501 and/or other import documents submitted to the United States to illegally and fraudulently evade paying thousands of dollars in duties owed on imports of hyperbaric chambers from Turkey. These actions included conspiring to employ false customs descriptions and misclassification to facilitate entry, reduce scrutiny, and evade duties, and to refrain from correcting known false statements via Post-Summary Correction.

87. HPO TECH committed, and continues to commit, the overt acts described in furtherance of the conspiracy, including but not limited to, making materially false statements on submissions of CBP Form 7501 to the United States, concealing and avoiding their obligation to pay tariff duties, and failing to correct knowingly false customs forms, estimates of duties, and liquidation payments.

88. HPO TECH's conspiracy violates, and continues to violate, 31 U.S.C. § 3729(a)(l)(C), by which HPO TECH obtained entry and release, and continues to obtain entry and release, of their hyperbaric chambers into the United States without paying amounts due to the United States. HPO TECH has knowingly or recklessly damaged the United States in an amount to be determined at trial.

WHEREFORE, Relator demands judgment in his favor on behalf of the United States, and against HPO TECH, in an amount equal to treble the damages sustained by reason of HPO TECH's conduct, together with civil penalties as permitted by 31 U.S.C. § 3729, attorneys' fees and costs, and such other, different, or further relief to which Relator may be entitled.

DATED: June 11, 2026

**BARRASSO USDIN KUPPERMAN FREEMAN & SARVER LLC**

BY: ______________________________
Shaun P. McFall
Benjamin P. Bucy
(GA Bar No. 526064) (*pro hac vice* to follow)
BARRASSO USDIN KUPPERMAN
FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2350
New Orleans, Louisiana 70112
Telephone: 504-589-9700
Facsimile: 504-589-9701
smcfall@barrassousdin.com
bbucy@barrassousdin.com

**ATTORNEYS FOR PLAINTIFF/RELATOR**

**Certificate of Service**

On or before June 25, 2026, Relator hereby certifies that in compliance with Rule 4 of the Federal Rules of Civil Procedure, service of this *Qui Tam* Complaint has been executed as follows:

**By Certified Mail to:**

United States Attorney's Office for the Southern District of New York

Attn: Assistant U.S. Attorney Jacob Bergman

26 Federal Plaza, 37th Floor

New York, NY 10278

**By Certified Mail to:**

Attorney General of the United States of America

Department of Justice

950 Pennsylvania Avenue, NW

Washington, DC 20530-0001